**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

IN THE MATTER OF THE SEARCH OF
SEIZED ELECTRONIC DEVICE AND
STORAGE MEDIA KNOWN AS:

A SILVER & BLACK MINIATURE
CELLULAR TELEPHONE;
NO BRAND/NO IDENTIFYING NUMBERS;
LAWRENCE KANSAS POLICE PROPERTY
NUMBER: P26-10950

Case No. 26-mj-08239-ADM

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Ryan M. Padilla, a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Task Force Officer (TFO) of the Federal Bureau of Investigation (FBI) and have been since January 2021. I am also a sworn Officer with the Lawrence, Kansas Police Department and have been since June 2012. I was promoted to the rank of Detective in March 2018. As a TFO, my duties include the investigation of criminal violations of Title 18 of the United States Code, particularly crimes of violence. During my career, I have developed evidence that was used as probable cause for search warrants and have participated in all aspects of search warrants for firearm offenses and illicit narcotics offenses.
2. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B. Therefore, it is not intended to include every fact or matter observed by me or known by law enforcement. The information provided is based on my personal knowledge and observations during the course

of this investigation, information conveyed to me by other law enforcement officials, and my review of records, documents, and other physical evidence obtained during this investigation.

**IDENTIFICATION OF DEVICES TO BE EXAMINED**

3. This affidavit is in support of an application for a search warrant authorizing the examination of property—a silver and black miniature cellular telephone with no brand/no identifying numbers (LKPD Property Number: P26-10950), hereinafter referred to as the TARGET TELEPHONE, which was seized by the Lawrence Kansas Police Department on September 24, 2026. Below is a photo of the TARGET TELEPHONE (also described in Attachment A).



4. The traffic stop involved a green Honda CRV (vehicle), bearing Kansas license plate: 2428AJX. During the traffic stop, Lawrence Police developed probable cause to search the vehicle, which led to the seizure of illicit narcotics, to include approximately one (1) ounce of methamphetamine and a .22 Remington rifle (firearm) with a sawed-off barrel and destroyed serial number (S/N). The firearm was in a gray EastSport (brand) backpack on the front passenger-side floorboard near the feet of front-seat passenger, Michael Allon Robinson (ROBINSON). The EastSport backpack also included Kansas Department of Correction (KDOC) paperwork belonging to ROBINSON, along with family photographs. The TARGET TELEPHONE was in a small blue/gray corduroy backpack on the front floorboard between

the driver's seat and front passenger seat, accessible to ROBINSON. Inside the blue/gray corduroy backpack was a clear plastic baggie containing approximately 28 grams of suspected methamphetamine. Furthermore, it is believed the TARGET TELEPHONE will lead to evidence related to violations of Title 18, United States Code, Section 922(g)(1) [Possession of a Firearm by a prohibited person], Tile 18, United State Code, Section 924(c)(1)(A) [Possession of a Firearm in Furtherance of a Drug Trafficking Crime; and Title 21, United States Code, Section 841(a)(1) [Possession with Intent to Distribute a Controlled Substance].

## PROBABLE CAUSE

5. On September 24, 2026, at approximately 1:30 p.m., Lawrence Police Sergeant Josh Guile (Guile) was concluding a routine patrol call in the 2500 block of Iowa Street, Lawrence, Douglas County, Kansas. Sergeant Guile observed a green Honda CRV, bearing Kansas license plate number 2428AJX (hereafter "vehicle") pass-by his location. Sergeant Guile observed a white male seated in the front right passenger seat of the vehicle, who he believed to be Michael Allon Robinson (ROBINSON). Sergeant Guile was aware ROBINSON was wanted, pursuant to a Kansas Department of Corrections (KDOC) absconder violation warrant.

6. Sergeant Guile proceeded to catch up to the vehicle at the intersection of W. 26th Street and Ridge Court, Lawrence, Kansas. Sergeant Guile observed a traffic violation committed by the driver of the Honda CRV. Sergeant Guile observed the vehicle signal to make a left turn, but the vehicle turned right onto the 2600 block of Ridge Court, Lawrence, Kansas. Following the traffic violation, Sergeant Guile initiated a traffic stop, and the vehicle came to a stop in the 2600 block of Ridge Court, Lawrence, Kansas.

7. Sergeant Guile conducted a passenger-side approach and observed the following occupants, Scott Klopfenstein (Klopfenstein) (Driver), Michael Robinson (ROBINSON) (front-seat

passenger), and Joni Sydney (Sydney) (rear-seat passenger). Sergeant Guile informed Klopfenstein of the reason for the traffic stop and Klopfenstein verbally acknowledged the traffic violation.

8. Klopfenstein and Sydney correctly identified themselves to Sergeant Guile, however, ROBINSON provided a false name of "Aaron Anderson (Anderson)." Sergeant Guile asked "Anderson" if his real name was Michael ROBINSON, in which ROBINSON answered "no" and refused to provide his correct identity. ROBINSON has unique neck and facial tattoos that are easily recognizable/identifiable. Therefore, Sergeant Guile knew that the person who identified himself as "Aaron Anderson" was Michael ROBINSON. Sergeant Guile provided police dispatch with Michael ROBINSON's identifiers, in which police dispatch confirmed ROBINSON had an active arrest warrant through KDOC (parole absconder violation), along with an active Douglas County Kansas traffic warrant. Sergeant Guile and Lawrence Police Officer Jared Madsen (Madsen) placed ROBINSON into custody without incident.

9. Sergeant Guile observed a gray "EastSport" (brand) on the front passenger-side floorboard of the vehicle, near where ROBINSON was seated. Klopfenstein reported the "EastSport" backpack was not his and he was not sure who the backpack belonged to. Sydney advised the "EastSport" backpack was not hers and stated it belonged to ROBINSON. Sydney asked law enforcement if she could leave, in which law enforcement determined they had no further reason to detain Sydney and allowed her to leave the scene at approximately 1:46 p.m..

10. At approximately 1:55 p.m., Lawrence Police Officer Austin Twite (Twite) arrived on scene. Officer Twite is a Patrol Service Dog (PSD) – K9 handler and is issued PSD-K9 Taz (Taz). Taz and Officer Twite are a certified PSD team through the Kansas Highway Patrol (KHP).

Taz is certified in the detection of methamphetamine, heroin, cocaine, and fentanyl. Taz is consistently reliable with the detection of these odors.

11. Upon Officer Twite's arrival, Sergeant Guile requested Officer Twite deploy PSD Taz for a vehicle sniff on the vehicle. Officer Twite retrieved PSD Taz from his patrol vehicle. PSD Taz conducted a sniff on the green Honda CRV and indicated the odor of narcotics emitting from the vehicle.

12. Sergeant Guile and Officer Twite conducted a search of the vehicle. Sergeant Guile located the gray "EastSport" backpack that he had previously observed still on the front passenger-side floorboard near the feet of where ROBINSON had been seated. The "EastSport" backpack was searched, and the following items were located:

    - Remington .22 rifle (firearm) that had the barrel and stock sawed off. No serial number was located, due to it being sawed off/removed.
    - Green digital scale.
    - Two empty containers of "Cannasseurs Club" that smelled of marijuana.
    - Torn envelope with the name "Michael Robinson" on it.
    - Open bottle of Mr. Boston Vodka and an open bottle of Crown Royal.
    - KDOC paperwork with the name "Michael Allon Robinson."
    - Multiple family photographs with ROBINSON in the images.

13. Officer Twite located a second blue/gray corduroy backpack laying on the front floorboard, in between the driver's seat and front passenger seat. The blue/gray corduroy backpack was searched, and the following items were located:

    - Red and clear Ziploc plastic baggie with a crystal-like substance consistent with methamphetamine. The baggie and substance weighed approximately 28 grams (approximately 1 ounce).

- Sandwich Ziploc baggie with a crystal-like substance consistent with methamphetamine that weighed approximately 4 grams.
- Jeep Patriot (vehicle) key with a Nike shoe chain and Nike key chain.
- Glass pipe with burnt residue consistent with THC wax.
- Trio vape box with trace amounts of marijuana and multiple other vapes
- Silver and black miniature cell phone (LKPD Property Number: P26-10950) (the TARGET TELEPHONE).
- Ten (10) blue circular pills with "TEVA" and "3927" in a clear plastic bag. The pills were later identified as Diazepam or Valium.

14. Officer Twite located a third backpack with colorful diamond designs on the rear driver-side seat. The colorful diamond designs backpack was searched, and the following items were located:

- Approximately twenty-five (25) syringes. Two (2) of the twenty-five (25) syringes contained a measurable mixture of red and clear liquid substance.

15. Using a MobileDetect drug test kit, Officer Twite conducted a field test of the suspected methamphetamine that was found inside the blue/gray corduroy backpack. A field test was conducted on the suspected methamphetamine located inside the red and clear Ziploc plastic baggie that was inside the blue/gray corduroy backpack. The test returned a presumptive positive result for methamphetamine.

16. Based on my training and professional experience, I know illicit narcotics dealers will possess larger amounts of narcotics to divide them up into smaller amounts for resale purposes. I know narcotics dealers will utilize digital scales to accurately weigh the drugs being distributed. Affiant knows narcotics dealers commonly carry firearms to protect their drugs and/or

proceeds. Michael ROBINSON possessed a scale and a firearm with the serial number removed. Additionally, 28 grams of suspected methamphetamine were in a blue/gray corduroy backpack that was located near where ROBINSON had been sitting and an additional four grams of suspected methamphetamine were divided into smaller baggies.

17. Based on my training and professional experience, I know illicit drug users and dealers will commonly use cellphones to conduct illicit drug transactions through text message, messaging applications, and social media. I know illicit drug dealers commonly use cellphones to take and send photographs and videos of their illicit drugs to potential buyers. I know cell phones contain identifying data like photos, emails, and other data for the owner/user of the phone. I know people involved in illegal activity commonly use cellphones to communicate and coordinate with other individuals involved in illegal activity, particularly when there are multiple individuals involved in the use, sale, and transfer of illegal drugs.

18. Upon review of ROBINSON's criminal history, it was determined that ROBINSON is federally prohibited from possessing firearms by virtue of convictions that are punishable by imprisonment for a term exceeding one year. Specifically, on May 8, 2015, ROBINSON was convicted of possession of marijuana with intent to distribute in Douglas County, Kansas District Court case number 2015CR112; and on September 26, 2025, ROBINSON was convicted of possession of methamphetamine in Jackson County, Kansas District Court case number 2025-CR-00113.

19. Furthermore, to complete a more thorough investigation into suspected violations of Title 18, United States Code, Section 922(g)(1) [Possession of a Firearm by a prohibited person], Title 18, United State Code, Section 924(c)(1)(A) [Possession of a Firearm in Furtherance of a Drug Trafficking Crime]; and Title 21, United States Code, Section 841(a)(1) [Possession with

Intent to Distribute a Controlled Substance], I request that a search warrant be issued for the TARGET TELEPHONE described above and in Attachment A.

## TECHNICAL TERMS

20. Based on my training and experience, I use the following technical terms to convey the following meanings:

21. Wireless/cellular telephone: A wireless telephone (or mobile phone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitters/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books" or "contacts" lists; sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

22. Geotagging: Geotagging is a feature that geographically tags the location and time of a photograph taken. The data saved at the time the image is captured is usually placed in a JPEG file using the exchangeable image file format (EXIF). The metadata within the EXIF is then readable by numerous photo editing software programs. Simply defined, metadata contains data that describe a file. In the case of EXIF metadata, it is data that describes data used by

digital cameras, digital imaging software, and others to describe the particular attributes of a digital image file. The tagging information is added to photographs or video at the time it is taken if the geotagging tool is enabled in the camera settings. Programs such as Google Maps can be used to track the location a photograph or video was taken using the metadata encoded in photograph or video.

23. SIM card: SIM cards, or Subscriber Identity Module cards, or Subscriber Identification Modules, are plastic cards that have an embedded circuit on them that stores personal information of the account holder, including his or her phone number, address book, text messages and other data. A SIM card user can easily change cellular phone handsets by simply removing the SIM card from one handset and placing it in another compatible handset. In addition to the SIM card's ability to identify the cell phone user's phone number, contacts list, and text messages, the SIM card stores information used by the wireless carrier to identify the subscriber.

24. SD Cards: SD cards are a type of storage medium that come in various sizes. Some wireless telephones contain removable SD cards, on which the phone can store data, including but not limited to pictures, video, audio recordings, and contact lists.

25. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar,

contact list, clock, or games.

26. GPS: A GPS navigation device uses Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System consists of multiple satellites orbiting the earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

27. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touchscreen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word processing documents, spreadsheets, and presentations. PDAs may also include GPS technology for determining the location of the device.

28. IP Address: An Internet Protocol address (or simple "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

29. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

30. Digital camera/SD Card/Memory Stick: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards, SD cards, memory sticks, or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

31. Based on my training, experience, and research, I know that the listed cellular telephones have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed

or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

32. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some time on the device. This information can sometimes be recovered with forensics tools.

33. There is probable cause to believe that things that were once stored on the device may still be stored there, for at least the following reasons:

34. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a storage medium, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

35. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

36. *Forensic evidence.* This application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the listed cellular telephones were used, the purpose of

its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the listed cellular telephones because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team

and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

37. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the listed cellular telephones consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

38. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

39. I hereby request the Court's permission to conduct a full and complete forensic phone examination for all records, data, and information on the listed cellular telephones and SIM cards described in the affidavit which relate to violations of Title 18, United States Code, Section 922(g) [Possession of a Firearm by a prohibited person], and Title 21, United States Code, Section 846(a)(1) [Possession with Intent to Distribute a Controlled Substance] and probable cause exists to believe the information and items listed herein will be found secreted

in the listed TARGET TELEPHONE, including:

a. Contact information, incoming and outgoing call information, pictures, videos, stored voicemail and text messages;

b. Device ownership and user information, including evidence of user attribution showing who used or owned the TARGET TELEPHONE at the time the things described in the warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

c. Photographs, images, and videos pertaining to drugs sales, drug use, and firearm use and possession in connection with such; including stored information related to the date, time, user and owner of the TARGET TELEPHONE, and location of the image generation;

d. Any geotagging information such as the camera's date and time clock, make and model, serial number, and location of photographs and videos determined by the camera's Global Positioning System receiver or geotagging tool. Including any identification information related to the use and ownership of the devices.

e. To include any and all searches of the internet or internet search history. Any and all searches of social media platforms and/or cell phone applications pertaining to drug sale, drug use, and firearm use and possession.

f. Any geotagging information such as the camera's date and time clock, make and model, serial number, and location of photographs and videos determined by the camera's Global Positioning System receiver or geotagging tool. Including any identification information related to the use and ownership of the devices.

40. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

The foregoing is true and correct to the best of my knowledge and belief.

RYAN PADILLA
Task Force Officer
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone this 23rd day of November 2026.

Honorable Angel D. Mitchell
United States Magistrate Judge
District of Kansas

# ATTACHMENT A

The property to be searched is described as a silver and black miniature cellular device (TARGET TELEPHONE), Lawrence Kansas Police Property Number: P26-10950. The Target Telephone is currently located at the Lawrence Kansas Police Department Headquarters (Evidence), 5100 Overland Drive, Lawrence, Kansas 66049.




This warrant authorizes the forensic examination of the TARGET TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

Things to be seized include all records, data and information on the TARGET TELEPHONE described in Attachment A that relate to violations of Title 18, United States Code, Section 922(g) [Possession of a Firearm by a prohibited person], and Title 21, United States Code, Section 846(a)(1) [Possession with Intent to Distribute a Controlled Substance] and Probable cause exists to believe the information and items listed herein will be found secreted in the listed TARGET TELEPHONE, including:

a. Contact information, incoming and outgoing call information, pictures, videos, stored voicemail and text messages;

b. Device ownership and user information, including evidence of user attribution showing who used or owned the TARGET TELEPHONE at the time the things described in the warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

c. Photographs, images, and videos pertaining to drugs sales, drug use, and firearm use and possession in connection with such; including stored information related to the date, time, user and owner of the TARGET TELEPHONE, and location of the image generation;

d. Any geotagging information such as the camera's date and time clock, make and model, serial number, and location of photographs and videos determined by the camera's Global Positioning System receiver or geotagging tool. Including any identification information related to the use and ownership of the devices.

e. To include any and all searches of the internet or internet search history. Any and all searches of social media platforms and/or cell phone applications pertaining to drug sale, drug use, and firearm use and possession.

f. Any geotagging information such as the camera's date and time clock, make and model, serial number, and location of photographs and videos determined by the camera's Global Positioning System receiver or geotagging tool. Including any identification information related to the use and ownership of the devices.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.